# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

Case No.:

ROMEGAS LLC, a Florida Limited
Liability Company, and JAMES
SEXTON, an individual,

       Plaintiffs,

v.

THE SEMINAR SOLUTIONS, INC.
d/b/a RADD INNER CIRCLE,
BRANDON DUTCH MENDENHALL, an
individual, AMY VAUGHN, an
individual, and TAYLOR GREEN,
an individual,

       Defendants.

_____/

## <u>COMPLAINT</u>

    Plaintiffs, Romegas LLC and James Sexton (collectively, "Plaintiffs"),

through undersigned counsel, hereby sue Defendants the Seminar Solutions, Inc.

d/b/a RADD Inner Circle ("RADD"), Brandon Dutch Mendenhall, Amy Vaughn,

and Taylor Green (collectively, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.     This is a civil action for damages and equitable relief arising from Defendants' operation of a fraudulent investment scheme in violation of federal racketeering laws, common law fraud, Florida Deceptive and Unfair Trade Practices Act (FDUTPA), fraud in the inducement, civil theft under Florida law, and breach of contract.

2.     Defendants, acting in concert through a structured enterprise, solicited over $100,000 from Plaintiffs through false pretenses and misrepresentations about purported investment opportunities and business services which were never performed.

3.     Defendants used a complex web of overlapping but fictitious business names, websites, and promotional materials to lure Plaintiff Sexton, a prominent media personality,  into lending his name, platform, and capital to Defendants' enterprise.

4.     Defendants never delivered the promised returns, services, or business opportunities. This action seeks to hold them accountable under federal and state law.

## THE PARTIES

5.      Plaintiff Romegas LLC is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida.

6.      Plaintiff James Sexton (hereinafter "Mr. Sexton") is an individual residing in Miami-Dade County, Florida.

7.      Defendant The Seminar Solutions, Inc. d/b/a RADD Inner Circle is an improperly registered entity purporting to do business in the State of Florida. It operates under multiple trade names and websites including "RADD Inner Circle" and "RAD Diversified" (hereinafter collectively referred to as "RADD").

8.      Defendant Brandon Dutch Mendenhall a.k.a. Dutch Mendenhall (hereinafter "Mendenhall") is an individual residing in Hillsborough County, Florida. He is the self-described CEO and founder of multiple entities under the "RADD" and "RAD Diversified" brands.

9.      Defendant Amy Vaughn (hereinafter "Vaughn") is an individual residing in Hillsborough County, Florida. She is listed as co-founder of RADD Companies and a director of various related entities.

10.    Defendant Taylor Green is an individual residing in Hillsborough County, Florida. He served as Chief Operating Officer of RADD Inner Circle and was the point of contact for Plaintiff's financial transactions.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction under 28 U.S.C. §1331 for claims arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

12.    This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

13.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events, including Defendants' representations at a Tampa conference, occurred in Hillsborough County, Florida.

14.    Defendants conducted business in this District and directed their fraudulent acts toward the Plaintiff in this District.

## FACTUAL ALLEGATIONS

15.    This case stems from the elaborate scheme by the Defendants to steal millions of dollars from unsuspecting investors, including the Plaintiff, by offering

too good to be true returns on investments, while leveraging the good will and popularity of celebrities, such as the Plaintiff, to add a false sense of legitimacy in order to hide their criminal endeavors.

16.    The Plaintiff, James Sexton (hereinafter "Mr. Sexton"), is a nationally known media personality with a large following and significant professional influence.

17.    In 2023, Mr. Sexton, a popular radio host on I Heart Radio, was introduced to the Defendants when they had initially purchased advertising airtime during his radio show.

18.    It was clear the Defendants were interested in targeting their investment schemes to Mr. Sexton's listeners.

19.    From all outward appearances, the RAD Diversified brands appear legitimate citing SEC filings, and formal webpages, touting returns on investments in excess of 8%.  A copy of the home page for RAD Diversified is attached hereto and marked as Exhibit "A."

20.    Mendenhall advertises himself to be a self-proclaimed investment guru, claiming to have "dedicated his career to teaching and helping people

become financially literate". A copy of the Meet the RAD Team is attached hereto as Exhibit "B." See also Dutch Mendenhall's personal website attached as Exhibit "C."

21.     Vaughn a self-professed "trail blazer in the real estate sector" and "[r]enowned for her dedication to mentoring investors. . . celebrated for her unwavering commitment to their interests." see Exhibit "B.

22.     The Defendants have cast their net wide, canvassing the country, offering seminars, consulting, and other real estate and investment opportunities.

23.     After the Defendants had secured an introduction to Mr. Sexton, Mendenhall and his representatives personally offered Mr. Sexton sponsorship and investment opportunities through RADD Inner Circle.

24.     During the sponsorship period, Mendenhall appeared with Mr. Sexton and frequently used Mr. Sexton's name in pursuing commercial opportunities and investors in his scheme. Mr. Sexton even attended a "conference" offered by the Defendants as a paid speaker.

25.    The Defendants assured Mr. Sexton that he would receive promotional support, high-yield investment returns, and access to exclusive real estate ventures in exchange for his endorsement and capital contributions.

26.    During this time, Mr. Sexton was introduced to Vaughn, who repeated many of the same facts about the Defendants' investment products and that their products were safe and generated a consistent high-quality rate of return on investment.

27.    The Defendants represented that RADD was a legitimate, structured real estate investment program with a proven track record.

28.    The RADD is touted on the website https//icradd.com and lists Mendenhall as a "renowned real estate educator, CEO and Founder of RADD Companies. Vaughn is listed as the Co-Founder of RADD Companies, building a $250 Million portfolio.

29.    The website https://icradd.com/privacy-policy states that "RADD Inner Circle is a real estate company involved in the acquisition, development leasing, management and financing of real estate and real estate projects.  RADD

provides the opportunity for investment to the public on its website under its SEC qualified public offering under Regulation A."

30.    The Defendants solicited Mr. Sexton to invest in their programs several times including:

    a.  A Zoom meeting on or about August 30, 2023, in which Mendenhall and Vaughn outlined the "RADD Inner Circle" investment structure,

    b.  Multiple emails from Taylor Green between August 31 and September 13, 2023, containing brochures, promotional decks, and references to high ROI returns;

31.    Amongst the many promises the Defendants made to Mr. Sexton were:

    a.  Mr. Sexton would be joining an exclusive group of vetted investors.

    b.  That Mr. Sexton would receive direct access to undervalued real estate investments.

c. Mr. Sexton would receive monthly updates on investment progress;

d. The Defendants would provide Mr. Sexton with co-investment opportunities with the RADD team;

e. The Defendants would provide business exposure and marketing support for Mr. Sexton's personal brand.

32.    Despite being an experienced real estate investor, Mr. Sexton was taken in by the documents and investment returns touted by Mendenhall and his representatives.

33.    On or about September 13, 2023, Mr. Sexton entered into a Memorandum of Understanding (MOU) with RADD Inner Circle and paid $50,000. A copy of the agreement is attached hereto and marked as Exhibit "D."

34.    On or about September 21, 2023, the Plaintiff Romegas entered into a Promissory Note with RADD Inner Circle and paid $50,000.  A copy of the Promissory Note is attached hereto and marked as Exhibit "E."

35.     Both agreements were presented by Taylor Green, acting on behalf of Mendenhall and Vaughn. Mr. Sexton was told these funds would be used to secure equity in specific real estate transactions to be disclosed post-funding.

36.     No investment opportunities were ever presented. No services were rendered. No documentation of use of funds was provided.

37.     In December 2023 at the RADD conference in Tampa, Mendenhall and Vaughn asked Mr. Sexton to join them for lunch in their hotel suite. The Defendants stated that they were starting a wholesaling fund for real estate that would make 20% returns for investors every year.

38.     Mendenhall and Vaughn explained that the minimum buy-in was $100,000.00, Mr. Sexton did not affirm that he would invest, but that he was interested.

39.     At the conclusion of lunch, Mendenhall and Vaughn had security escort Mr. Sexton back to the main event auditorium, but instead of the areas with other members, security took Mr. Sexton to a computer terminal where a RADD employee was waiting and asked for his bank account information for the $100,000.00 wire transfer.

40.    Mr. Sexton refused to transfer $100,000.00 to the RADD Employee without any form of paperwork, but did agree to $10,000.00, which after the conference Mr. Sexton ultimately invested.

41.    At a dinner during the December conference, Vaughn told Mr. Sexton that RADD had over $250,000,000.00 in real estate assets and that they would get to a billion dollars of assets within two years. She never indicated that there was any financial distress in any of their funds or portfolios.

42.    Leah Galindo, who was Mr. Sexton's assigned inner-circle coordinator, explained to Mr. Sexton during the convention that "no inner circle member had ever lost money on any deal" and that "[Mendenhall] has told them he would pay them out of his own funds before he would let anyone in the inner circle lose money on a deal.

43.    The Defendants' grand promises of sweeping returns never materialized.

44.    Within four months of the Convention, RADD had defaulted on its Promissory Note to the Plaintiff Romegas.

45.    In April 2024, Leah Galindo explained that RADD would not be repaying on the Promissory Note. A copy of the email is attached hereto and marked as Exhibit "F".

46.    During that same April 2024 discussion, when asked about specific real estate investment opportunities, Ms. Galindo said RADD had a golf course which Mr. Sexton could invest $30,000.00 in for a 1% share.

47.    Ms. Galindo explained that the golf course would be generating twice as much income in a year as it currently was. When pressed for a basis for this valuation, Ms. Galindo said Mendenhall would guarantee it.

48.    When asked for paperwork or any other supporting evidence for the golf course investment, Ms. Galindo admitted she had none. Mr. Sexton declined to invest and requested his money back as no services were being provided.

49.    Ms. Galindo stated she would speak to management but was fired shortly thereafter.

50.    All other follow-up communications were met with silence or generic delay responses. Mendenhall and Vaughn ultimately ceased all direct communication with Mr. Sexton.

**Kelley Kronenberg**
10360 West State Road, 84, Fort Lauderdale, Florida 33324

51.     To this day, the Defendants continue to operate their websites and promote the same investment opportunity to others.

52.     Defendants never registered the corporate entities properly in the State of Florida. No valid filings exist under the names "The Seminar Solutions" or "RADD Inner Circle."

53.     The websites and promotional materials cited "Regulation A" exemptions and SEC-qualified offerings, though no such filings appear in EDGAR or other federal databases.

54.     It appears that the various corporations and brands are simply the alter egos of the officers themselves, Mendenhall, Vaughn and Green, who attempt to use them to improperly shield themselves from liability while actively obfuscating the investment scheme.

55.     These companies and fictitious names are used by the defendants to create a complex and interrelated structure that is used to defraud investors.

56.     The Defendants would secure funds through a variety of enterprises from a variety of sources using debt, equity and subscription schemes to entice investors into the scheme. These funds were placed in general accounts that were

used entirely at the discretion of Mendenhall and the defendants. It appears that no investments were ever actively assigned or associated with the individuals and corporations that contributed funds to the scheme.

57. Instead of investing clients' funds, the Defendants pooled incoming funds and used them to pay off prior obligations, pay for unrelated business expenses, or enrich themselves personally.

58. While initially the Defendants' plan to pay off earlier investors with new money, while siphoning off large portions into spin-off corporations worked, their scheme seems to have come to an end.

59. The Defendants no longer have the deluge of new investors that they once did, as the cry for refunds grows louder. See other recently filed cases attached hereto and collectively referred to as Exhibit "G"

60. Plaintiffs' demands for a refund, performance, or mediation have been ignored. Arbitration demands were likewise unanswered.

61. As a result, the Plaintiffs have lost in excess of $100,000.00, suffered reputational damage, and lost anticipated investment opportunities tied to their media platform.

**Kelley Kronenberg**
10360 West State Road, 84, Fort Lauderdale, Florida 33324

62.     The enterprise operated by Defendants used a structure, continuity, and common purpose to engage in racketeering activity, including wire fraud and securities fraud.

63.     Defendants acted in concert, coordinated their communications, and used instrumentalities of interstate commerce to effectuate the fraud.

64.     The pattern of conduct threatens continued unlawful activity unless restrained by judicial intervention.

65.     The Plaintiffs have been forced to retain the undersigned attorneys to file this suit for its lost costs and damages and has agreed to pay reasonable legal fees.

## COUNT I.
### VIOLATION OF RICO – 18 U.S.C. §§ 1962(c) and 1964(c)
### (Against All Defendants)

66.     Plaintiffs re-allege and incorporate paragraphs 1 through 65 above as though fully set forth herein.

67.     Defendants conducted and participated in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

## RICO ENTERPRISE

68.    The enterprise consists of a group of individuals and entities associated-in-fact, including but not limited to The Seminar Solutions, RADD Inner Circle, RAD Diversified, RAD Diversified REIT, and other related shell or front companies controlled and operated by Defendants Mendenhall, Vaughn, and Green.

69.    The enterprise has an ongoing organizational structure, a common purpose (to solicit funds from investors under false pretenses), and the continuity necessary to qualify as a RICO enterprise.

70.    The enterprise engaged in interstate commerce through use of online platforms, email solicitations, phone communications, wire transfers, and promotional events spanning multiple states.

## PATTERN OF RACKETERRING ACTIVITY

71.    Defendants, through the enterprise, engaged in multiple acts of wire fraud and securities fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1348.

72.    Specifically, Defendants used email, phone, and internet communications to solicit funds from Plaintiffs and other investors under

materially false pretenses, including a. That their funds would be used for identified real estate investments; b. That RADD Inner Circle was a legitimate investment vehicle; c. That Defendants were licensed and properly registered under applicable state and federal laws.

73.    Predicate acts include, but are not limited to:

a.  An email dated August 31, 2023, from Taylor Green containing a slide deck misrepresenting investment return and citing fictitious testimonials.

b.  A Zoom call on or about August 30, 2023, during which Mendenhall and Vaughn presented fabricated investment structures.

c.  Execution of an MOU and Promissory Note in September 2023 based on those misrepresentations.

d.  In December 2023, statements made by Vaughn and Mendenhall for new real estate investments and increased returns.

e.  Ms. Galinda's communication in April of 2024 regarding the investment into a golf course with no supporting documentation

74.    These acts are related and amount to a continued threat of criminal conduct.

75.    Defendants have engaged in at least two predicate acts of racketeering within a 10-year period.

## CONDUCT OR PARTICIPATION

76.    Each Defendant participated in the operation or management of the enterprise:

    a.  Mendenhall directed fraud and oversaw enterprise activities.

    b.  Vaughn acted as co-founder and public representative of the operation.

    c.  Green personally negotiated and transmitted fraudulent contracts to Plaintiffs.

77.    Each Defendant knowingly and willfully conducted or participated in the enterprise's affairs through the pattern of racketeering activity.

## DAMAGES

78.     As a direct and proximate result of Defendants' violations of 18 U.S.C.

§ 1962(c), Plaintiffs suffered injury to their business or property in an amount no

less than $100,000.

79.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble

damages, costs of suit, and reasonable attorneys' fees.

WHEREFORE, Plaintiffs demand judgment against all Defendants, jointly

and severally, for treble damages pursuant to 18 U.S.C. § 1964(c), pre- and post-

judgment interest, attorneys' fees, and such other relief as this Court deems just

and proper.

## COUNT II
## COMMON LAW FRAUD
### (Against All Defendants)

80.     Mr. Sexton re-alleges and incorporate paragraphs 1 through 65 as

though fully set forth herein.

81.     Defendants made false statements of material fact, including but not

limited to:

    a.  Representations that Plaintiff would receive exclusive access to real estate investments.

    b.  Promises of high, reliable returns on investment in excess of 20%

    c.  Assurances that Defendants were operating legally registered entities with properly managed investment funds.

    d.  Claims that Plaintiff's funds would be used specifically for acquiring and managing real estate.

82.    These statements were false, and Defendants knew or should have known them to be false at the time they were made.

83.    Defendants made these statements with the intent to induce Plaintiff to rely on them and invest funds in the RADD Inner Circle program.

84.    Plaintiff reasonably relied on these representations in agreeing to enter into the MOU and Promissory Note and in wiring $100,000 to Defendants.

85.    As a direct and proximate result of this fraudulent conduct, Plaintiffs suffered damages in the amount of no less than $100,000.

WHEREFORE, Plaintiffs demand judgment against all Defendants for compensatory damages, pre- and post-judgment interest, attorneys' fees, and such other relief as the Court deems just and proper.

**COUNT III**
**FRAUD IN THE INDUCEMENT**
**(Against Mendenhall)**

86.     Plaintiffs re-allege and incorporate paragraphs 1 through 65 as though fully set forth herein.

87.     Mendenhall made false statements of material fact with the specific intent to induce the Plaintiffs into entering the MOU and Promissory Note agreements.

88.     These misrepresentations included, without limitation, claims that:

    a. Plaintiffs would be introduced to exclusive, high-yield real estate investments.

    b. Plaintiffs' funds would be used for immediate, tangible investment projects.

89.     At the time the statements were made, Mendenhall knew the representations were false and made them solely to induce Plaintiff's investment.

90.    Plaintiffs relied on these misrepresentations and were thereby fraudulently induced into investing $100,000.

91.    As a result of Mendenhall's false statements, the Plaintiffs have been damaged as they have lost their investment funds.

WHEREFORE, Plaintiffs demand judgment against all Brandon Dutch Mendenhall for compensatory damages, pre- and post-judgment interest, attorneys' fees, and such other relief as the Court deems just and proper.

## COUNT IV
## FRAUD IN THE INDUCEMENT
### (Against Vaughn)

92.    Plaintiffs re-allege and incorporate paragraphs 1 through 65 as though fully set forth herein.

93.    Vaughn made false statements of material fact with the specific intent to induce the Plaintiffs into entering the MOU and Promissory Note agreements.

94.    These misrepresentations included, without limitation, claims that:

a.  Plaintiffs would be introduced to exclusive, high-yield real estate investments.

b. Plaintiffs' funds would receive a 20% return on investment every year.

95. At the time the statements were made, Vaughn knew the representations were false and made them solely to induce Plaintiff's investment.

96. Plaintiffs relied on these misrepresentations and were thereby fraudulently induced into investing $100,000.

97. As a result of Vaughn's false statements, the Plaintiffs have been damaged as they have lost their investment funds.

WHEREFORE, Plaintiffs demand judgment against all Amy Vaughn for compensatory damages, pre- and post-judgment interest, attorneys' fees, and such other relief as the Court deems just and proper.

**COUNT V**
**VIOLATION OF FLORIDA DECEPTIVE AND**
**UNFAIR TRADE PRACTICES ACT**
**(Fla. Stat. §§ 501.201–213)**
**(Against All Defendants)**

98. Plaintiffs re-allege and incorporate paragraphs 1 through 65 as though fully set forth herein.

99. Defendants engaged in deceptive and unfair practices in violation of FDUTPA by:

     a. Misrepresenting the existence, structure, and legitimacy of investment opportunities.

     b. Falsely advertising and promoting RADD Inner Circle as a legal, properly registered real estate investment platform.

     c. Omitting material facts concerning Plaintiffs the use of investor funds, corporate status, and prior defaults.

     d. Continuing to solicit and accept funds without disclosing the lack of any real investment structure or regulatory compliance.

100. These deceptive and unfair practices were likely to mislead consumers acting reasonably under the circumstances and misled Plaintiffs to their detriment.

101. Plaintiffs relied on Defendants' representations and suffered actual damages in the amount of $100,000.

102. Defendants' conduct constitutes a violation of FDUTPA under Florida law, including Fla. Stat. § 501.204.

**Kelley Kronenberg**
10360 West State Road, 84, Fort Lauderdale, Florida 33324

WHEREFORE, Plaintiffs demand judgment against Defendants for actual damages, attorneys' fees and costs pursuant to Fla. Stat. § 501.2105, declaratory relief, and such other relief as the Court deems just and proper.

## COUNT VI
## BREACH OF RADD INNER CIRCLE MOU AGREEMENT
### (RADD Inner Circle-all Defendants)

103.    Plaintiffs re-allege and incorporate paragraphs 1 through 65 as though fully set forth herein.

104.    The Memorandum of Understanding was a valid and enforceable contract between RADD Inner Circle and the Plaintiff.

105.    The Seminar Solutions d/b/a RADD Inner Circle is not properly registered within the state of Florida, as a result, Defendants Mendenhall, Vaughn and Taylor entered the contract jointly and severally.

106.    Mr. Sexton paid $50,000.00 consideration for services to be performed by RADD Inner Circle and contained within Exhibit D.

107.    The Defendants did not provide services to Mr. Sexton, and as a result a material breach of the contract occurred.

108.    Mr. Sexton made demand under the terms of the contract for the services and for restitution.

109.    Defendants have not made any restitution or attempt to fulfill their services included within the MOU.

110.    All conditions precedent including a request for mediation have occurred or expired.

111.    Mr. Sexton has been injured by the Defendants' breach.

112.    The MOU entitles the prevailing party in any dispute to receive his/her reasonably legal fees and costs.

WHEREFORE the Plaintiff, Mr. Sexton, demands a judgment against the Defendants for $50,000.00, including costs, interests, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

## COUNT VII
## VIOLATIONS OF SECTION 17(A)(2) OF THE SECURITIES ACT
### (All Defendants)

113.    Mr. Sexton re-alleges and incorporate paragraphs 1 through 65 as though fully set forth herein.

114. The Defendants, through Mendenhall, Vaughn, and Green, knowingly mispresented material facts when presenting the rate of return and profitability of the RADD corporations.

115. Mr. Sexton relied on the Defendants' representations when he entered into the MOU to invest his funds into the RADD programs.

116. As a result of the misrepresentations, Mr. Sexton has been damaged.

WHEREFORE, Plaintiff, Mr. Sexton demands judgment against all Defendants for damages, costs, pre- and post-judgment interest, and all other relief the Court deems just and proper.

## JURY DEMAND

The Plaintiffs demand a trial by jury for all issues so triable.

*(Space Intentionally Left Blank)*

Respectfully submitted August 25, 2025.

**KELLEY KRONENBERG**

*/s/ Ejola Christlieb Cook*

**Ejola Christlieb Cook, Esq**.
Fla. Bar No.: 0010327
ecook@kelleykronenberg.com
10360 West State Road 84
Fort Lauderdale, FL  33324
Telephone: (954) 370-9970
Facsimile:  (954) 382-1988
Attorney for the Plaintiffs