UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES SEXTON, and
ROMEGAS LLC,

      Plaintiffs,

v.                                                                                    Case No. 8:25-cv-2261-TPB-AEP

THE SEMINAR SOLUTIONS, INC.
d/b/a RADD INNER CIRCLE, et al.,

      Defendants.
_____/

### ORDER DENYING "PLAINTIFFS' MOTION TO PRECLUDE DEFENDANTS FROM USING TAINTED ASSETS TO FUND THEIR DEFENSE AND TO REQUIRE A SHOWING THAT ANY FUNDS USED FOR LEGAL FEES ARE UNRELATED TO THE ALLEGED FRAUD"

This matter is before the Court on "Plaintiffs' Motion to Preclude Defendants from Using Tainted Assets to Fund Their Defense and to Require a Showing That Any Funds Used for Legal Fees are Unrelated to the Alleged Fraud," filed on March 6, 2026. (Doc. 31). Defendants filed a response on March 19, 2026. (Doc. 37). After reviewing the motion, response, court file, and the record, the Court finds as follows:

### Background

This case arises from an investment in a real estate venture gone wrong. Plaintiff James Sexton is a radio personality, and he is the only authorized member of Plaintiff Romegas LLC, a Florida limited liability company.[1] Plaintiffs allege

_____

[1] Romegas specifically entered into a $50,000 promissory note with Defendant RADD Inner Circle ("RIC"), which is at issue in this case.

they were introduced to Defendant RIC, Brandon Dutch Mendenhall, Amy Vaughn, and Taylor Green when Defendants purchased advertising airtime during Sexton's radio show.[2] After their initial introduction, Defendants offered Sexton a sponsorship and investment opportunities.

From the time they met in August 2023 through April 2024 – a mere eight months – Plaintiffs allege that Defendants, and Defendant RIC's former employee and non-party Leah Galinda, solicited Sexton to invest in their programs and promised him high returns on his investments. In total, Plaintiffs collectively invested $110,000 into RIC. But Plaintiffs allege that Defendants are operating an elaborate scheme to solicit funds from him and others through false pretenses and misrepresentations about investment opportunities and various business services that were never performed.

On August 25, 2025, Plaintiffs filed a seven count complaint asserting claims for: violation of RICO against all Defendants (Count I), common law fraud against all Defendants (Count II), fraud in the inducement against Mendenhall (Count III), fraud in the inducement against Vaughn (Count IV), violation of Florida Deceptive and Unfair Trade Practices Act against all Defendants (Count V), breach of contract against all Defendants (Count VI), and violations of § 17(A)(2) of the Securities Act against all Defendants (Count VII).

---

[2] Plaintiffs allege that Mendenhall is the chief executive officer of RIC, Vaughn is a co-founder and director of RIC and various related entities, and Green is the chief operating officer of RIC and the main point of contact for Plaintiffs' financial transactions.

On March 6, 2026, Plaintiffs moved for a temporary restraining order and preliminary injunction, which the Court later denied.  (Docs. 31; 32).  On March 24, 2026, the Court dismissed the complaint, with leave to amend.  (Doc. 38).  Plaintiffs filed an amended complaint on April 7, 2026.  (Doc. 40).

In the instant motion, Plaintiffs request the Court: (1) preclude Defendants from using any assets derived from the alleged fraudulent enterprise to fund their defense, or in the alternative (2) require Defendants to demonstrate that any funds used to fund their defense are not derived from the alleged fraudulent enterprise, and (3) require appropriate disclosures concerning defense funding.

## Analysis

The equitable relief Plaintiffs request in the instant motion is both extraordinary and inappropriate.  *See, e.g., Grupo Mexicano de Dessarrolo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999); *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1527-28 (11th Cir. 1994).  As the Court already explained in a prior Order, equitable relief – including an asset freeze – is unavailable when Plaintiffs possess an adequate remedy at law in the form of money damages.[3]  *See* (Doc. 33); *see also Rosen*, 21 F.3d at 1527-31 ("[A] district court lacks the authority to issue a preliminary injunction freezing the assets of a defendant in a case seeking only money damages."); *see also Kurlander v. Kaplan*, No. 8:19-cv-644-T-02CPT, 2019 WL 1244139, at *1 (M.D. Fla. Mar. 18, 2019) (Jung, J.) (relying on "axiom that cases seeking monetary damages do not fall within the jurisdiction of equity").

---

[3] Plaintiffs do not assert any equitable claims to specific property in this case.

Plaintiffs argue that they seek a "narrowly tailored remedy" and are not asking the Court to freeze *all* of Defendants' assets. That misses the point. Even if Plaintiffs were to seek equitable relief – which again, they have not – the Court is unable to grant the requested relief absent any evidence that Defendants' assets are related to the underlying litigation. *See Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1521 (11th Cir. 1994) ("[A] court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment."); *TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 929 F. Supp. 2d 1255, 1260-61 (M.D. Fla. 2013) (holding that the magistrate judge's finding that funds derived from the alleged fraud must be held in trust was not contrary to the law because, among other things, it was undisputed that the assets were directly related to the litigation).

In this case, while putting forth absolutely no evidence that any alleged fraud is tied to any assets Defendants are using to pay their counsel or otherwise fund their defense, Plaintiffs assert that they are "not required to trace specific dollars with forensic precision." Instead, Plaintiffs ask the Court to place the burden on Defendants to show that the money they are paying defense counsel is not derived from the alleged fraud to avoid leaving Plaintiffs without an effective remedy. Importantly, Plaintiffs do not point to any controlling or persuasive authority that would place this type of burden on Defendants, especially in light of Plaintiffs' failure to show that Defendants are currently misappropriating any of the funds obtained from Plaintiffs. Plaintiffs' belief that any funds that they could be entitled

to should they prevail in this lawsuit will either be spent on legal counsel or moved

offshore amounts to nothing more than mere speculation.

### Conclusion

Existing law does not generally support requests of this nature.  For that

reason, these requests are typically not brought at all.  And in those very rare

occasions when they are attempted, they are almost always denied.  Unnecessarily

aggressive litigation tactics such as this are discouraged for many reasons,

including the fact that litigation costs could easily exceed the value of any potential

recovery.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Plaintiffs' Motion to Preclude Defendants from Using Tainted Assets to

Fund Their Defense and to Require a Showing That Any Funds Used for

Legal Fees are Unrelated to the Alleged Fraud" (Doc. 31) is hereby **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 9th day of

April, 2026.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE